**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KYLE THIBEAULT,

        Plaintiff,

vs.                                                             Case No:  8:13-cv-586-T-MCR

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XIV application for supplemental security income on August 12, 2009 (Tr. 208-18).   In both applications, Plaintiff alleged disability beginning on December 1, 2008.  Id.  The Social Security Administration ("SSA") denied Plaintiff's applications initially on September 28, 2009, and upon reconsideration on March 18, 2010.  (Tr. 90-93,110-17,121-26).  Plaintiff requested a hearing before an Administrative

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

1

Law Judge ("ALJ") on April 5, 2010 (Tr. 127-28).  The hearing was held on January 23, 2012 in Tampa, Florida (Tr. 35-63).

The ALJ found Plaintiff not disabled on February 9, 2012 (Tr. 8-32).  Subsequently, Plaintiff requested a review by the Appeals Counsel, which was denied on January 10, 2013 (Tr. 1-3).  Therefore, having exhausted all administrative remedies, Plaintiff timely filed his Complaint (Doc. 1) on March 4, 2013, seeking judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.  NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since December 1, 2008, due to arthritis, degenerative disc disorder, and herniated discs in his back and neck (Tr. 231).  Plaintiff was forty-four years old at the time the ALJ rendered his opinion (Tr. 16).  Plaintiff completed school and received his high school diploma.  Id.  Plaintiff has past relevant work as a lubrication servicer, tire and tube servicer, and commercial or institutional cleaner (Tr. 56).

### B.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, he is

not disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).   Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.   20 C.F.R. § 404.1520(d).   Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.   20 C.F.R. § 404.1520(e).   Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act (the "Act") and was insured for benefits through December 31, 2010.  (Tr. 13).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 1, 2008.  Id.  At step two, the ALJ found Plaintiff had the following severe impairments: cervicalgia, mild degenerative changes of T12-L1 with no subluxation post-laminectomy, facet arthropathy syndrome, lumbosacral neuritis (NOS) and general osteoarthrosis (degenerative joint disease), left shoulder impingement syndrome with acromioclavicular (AC) joint arthritis, as well as a depressive disorder (not otherwise specified), developmental reading, arithmetic and spelling disorder, and borderline intellectual functioning (Tr. 13-14).  At step three, the

ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).  Consequently, the ALJ assessed Plaintiff's RFC and found,

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant cannot lift more than 10 pounds occasionally, stand and/or walk approximately 2 hours in an 8-hour workday, sit approximately 6 hours in and [sic] 8-hour workday, with the ability to sit and/or stand as needed. The claimant can never climb ladders, ropes, or scaffolds and only occasionally climb ramps or stairs, balance, stoop, crouch, kneel or crawl. Moreover, he would be limited to unskilled work at SVP 1 or 2 performing simple, routine, and repetitive tasks.

(Tr. 15).  At step four, the ALJ found Plaintiff was unable to perform his past relevant work (Tr. 24).  At step five, utilizing a vocational expert ("VE"), the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as order clerk, reception clerk and sorter (Tr. 25-26).   Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2008 through the date of his decision (Tr. 26).

### III. ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.    42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than

4

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.** **Issues on Appeal**

Plaintiff raises four issues on appeal. First, Plaintiff argues the ALJ failed to properly consider whether Plaintiff meets the listing for mental retardation. Second, Plaintiff argues the ALJ failed to give proper weight to the medical expert opinions. Third, Plaintiff argues the ALJ erred in rejecting Plaintiff's complaints of pain. Fourth, Plaintiff argues the ALJ erred by finding Plaintiff could perform work outside of his residual functional capacity. The Court addresses each argument in turn.

### i.      Listing 12.05C

Plaintiff argues the ALJ failed to properly consider whether Plaintiff meets Listing 12.05C for mental retardation.    The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity.    By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education or work experience.    Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.    Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984).    However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he is disabled.    Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987).

"To meet the requirement of a listing, [a claimant] must have a medically determination impairment(s) that satisfies all of the criteria of a listing."    20 C.F.R. § 404.1525(d).    "An impairment that manifests only some of the criteria, no matter how severely, does not qualify."    Sullivan v. Zebley, 493 U.S. 521, 530 (1990).    The claimant "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."    Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).    To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment."    20 C.F.R. § 404.1526(a). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and

laboratory findings to determine whether the combination is medically equal to any listed impairment." Wilson, 284 F.3d at 1224.

Here, Plaintiff's burden was to establish presumptive disability under Listing 12.05, which provides, in pertinent part:

> *Mental Retardation:* Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Subsection C requires a "valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05C (emphasis added).

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure for the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If [the claimant's] impairment satisfies "the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, [the Commissioner] will find that [the claimant's] impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (emphasis added).  Therefore, Plaintiff's burden was to establish his impairments satisfied the diagnostic description in the introductory paragraph of Listing 12.05, as well as the requirements of subsection C.

Plaintiff argues he satisfies Listing 12.05C and the ALJ erred in failing to explicitly address the listing. Plaintiff relies primarily on the January 16, 2012 evaluation by examining psychologist Dr. William Kremper, during which Dr. Kemper administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") (Tr. 505-08). Plaintiff's performance on the WAIS-IV earned him a Verbal Comprehension Index score of 86, Perceptual Reasoning Index score of 73, Working Memory Index score of 71, Processing Speed Index score of 68, and a full scale IQ score of 71 (Tr. 507). Dr. Kremper opined Plaintiff's widely diverse subtest scores were typical of an individual who is learning disabled. Id. Dr. Kremper diagnosed depressive disorder (not otherwise specified), developmental reading, arithmetic and spelling disorders, and borderline intellectual functioning. Id. Plaintiff argues this evidence establishes he satisfies the criteria for subsection C because he received a Processing Speed Index score of 68, "which for purposes of disability should be categorized as a 'performance' IQ" and falls within the specified range (Doc. 22 at 10). Plaintiff argues his long history of severe back pain meets the second portion of subsection C's requirements.

In his opinion, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments" (Tr. 14). Although the ALJ did not specifically discuss Listing 12.05C, "it is not required that the [Commissioner] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." Keane v. Comm'r of Soc. Sec., 205 F.App'x 748, 750 (11th Cir. 2006) (quoting Hutchinson v. Bowen, 787

F.2d 1461, 1463 (11th Cir. 1986)). The Court concludes that substantial evidence supports the ALJ's decision that Plaintiff did not meet Listing 12.05C.

Contrary to Plaintiff's arguments, he has not shown his impairments satisfy the criteria for Listing 12.05C. Regarding the diagnostic description in the introductory paragraph, no medical source has diagnosed Plaintiff with mental retardation. Dr. Kremper, the psychologist who administered Plaintiff's intelligence testing, diagnosed Plaintiff with borderline intellectual functioning, not mental retardation. See Outlaw v. Barnhart, 197 F.App'x 825, 827 (11th Cir. 2006) (holding ALJ did not err in concluding plaintiff was not disabled under Listing 12.05C where IQ scores from plaintiff's developmental period showed he had an IQ above 70 and two psychologists concluded he functioned in the borderline range of intellectual functioning); Carter v. Astrue, No. 3:08-cv-37(CDL), 2009 WL 2750987, at *3 (M.D. Ga. Aug. 26, 2009) ("[The administering psychologist's] clinical impression of borderline functioning is significant because it rebuts the presumption of deficits in adaptive functioning."). Plaintiff did not even offer any argument that he satisfied the diagnostic description in the introductory paragraph of Listing 12.05, i.e. that he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which initially manifested prior to the age of 22. Moreover, Plaintiff did not receive a qualifying verbal, performance, or full scale IQ score to satisfy subsection C. Without citing any authority, Plaintiff contends his Processing Speed Index should be characterized as a "performance IQ" score. However, relevant authority suggests the Perceptual Reasoning Index, not the Processing Speed Index, is the equivalent of a performance IQ score. See Martin v.

Comm'r of Soc. Sec., No. SAG-12-1130, 2013 WL 4512071, at *2 (D. Md. Aug. 22, 2013) ("Because the various tests have been modified since the Listings were created, the 'verbal comprehension index score' is the equivalent of the 'verbal IQ,' and the 'perceptional reasoning index score' is the equivalent of the 'performance IQ.'"); Smith v. Astrue, No. 11-948-CJP, 2012 WL 2990064, at *3 (S.D. Ill. July 20, 2012) ("On [the Wechsler Adult Intelligence Scale-IV], the verbal comprehension index is the functional equivalent of the verbal IQ on the earlier version, and the perceptual reasoning index is the functional equivalent of the performance IQ on earlier versions."); Isaac ex rel. J.D.M. v. Astrue, No. 1:12-97-C, 2012 WL 5373435, at *4 (S.D. Ala. Oct. 30, 2012) ("[T]he plaintiff simply has not provided the Court with any support for the position that it should take JDM's [sic] Jr.'s 'working memory' score of 68 to mean that he has a 'valid verbal, performance, or full scale IQ of 60 through 70.'"); Green ex rel. K.C.G. v. Astrue, No. 09-1028, 2011 WL 1440363, at *4 (M.D. La. Feb. 15, 2011), *report & recommendation adopted*, 2011 WL 1456218 (M.D. La. Apr. 14, 2011) ("The terms Verbal IQ (VIQ) and Performance IQ (PIQ) have been replaced with the terms Verbal Comprehension Index (VCI) and Perceptional Reasoning Index (PRI) respectively.") (quoting David Weschler, WISC-IV Administration & Scoring Manual 4 (2003)).  Here, each of Plaintiff's relevant scores was above the cutoff of 70 required to meet the listing. Accordingly, the Court finds no error with respect to the ALJ's determination that Plaintiff did not meet Listing 12.05C.

### ii.    Opinion Evidence

Plaintiff argues the ALJ gave insufficient weight to the opinion of examining psychologist Dr. William Kremper and gave too much weight to the opinion of the non-examining expert, Dr. Edmund Molis.

### a.  Dr. Kremper

Dr. William Kremper, Ph.D. conducted a psychological evaluation of Plaintiff on January 16, 2012 (Tr. 505-08).  Plaintiff reported he was unable to work due to chronic back pain (Tr. 505).  He alleged the pain was mostly an eight out of ten, but reached ten with prolonged standing or stooping.  Id.  Plaintiff reported feeling depressed and frustrated because of his inability to work. Id.  He reported being a high school graduate, but claimed he was in special education classes due to difficulties with reading, spelling and math.  Id.

Plaintiff reported he was hospitalized for surgery on two herniated discs approximately eight or nine years prior.  Id.  Plaintiff reported he was admitted to the hospital due to a nervous breakdown approximately five years ago after he threatened to harm himself (Tr. 506).  He reported he had attempted or considered suicide on three occasions.  Id.  He denied any follow- up outpatient mental health treatment.  Id.

With regard to his activities of daily living, Plaintiff reported he spent much of his day watching television and occasionally doing other household activities.  Id.  He reported he was able to vacuum and sweep, but paid for it afterward with increased pain.  Id.  Plaintiff alleged he was unable to cook other than heating food in the microwave because he could not stand in front of the stove to cook.  Id.

11

On examination Dr. Kremper noted Plaintiff displayed chronic pain behaviors of mild agitation, restlessness and bracing while seated, and asked permission to stand several times.  Id.  Dr. Kremper reported Plaintiff appeared frustrated and emotionally distraught due to his chronic pain condition.  Id.  Dr. Kremper noted rapport was good, and Plaintiff related in a socially appropriate manner with a fair degree of social skills. Id.  Plaintiff was well oriented to person, place, time and circumstances, with normal speech.  Id.  Plaintiff's thought process was logical and goal-directed with no confusion, disorganization or tangentially.  Id.

Dr. Kemper noted Plaintiff appeared to have significant verbal memory difficulties, as he was only able to recall one of four words after five minutes.  Id.  Dr. Kemper noted Plaintiff "appeared to have difficulty on tasks requiring sustained attention such as when completing mental arithmetic."  Id.  Plaintiff's performance on the WAIS-IV earned him a Verbal Comprehension Index of 86, Perceptual Reasoning Index of 73, Working Memory Index of 71, Processing Speed Index of 68, and a full scale IQ of 71 (Tr. 507).  Dr. Kremper opined Plaintiff's widely diverse subtest scores were typical of an individual who is learning disabled.  Id.  Dr. Kremper diagnosed depressive disorder (not otherwise specified), developmental reading, arithmetic and spelling disorders, and borderline intellectual functioning.  Id.

Dr. Kremper opined Plaintiff was not capable of performing adequately within a competitive work setting consistent with his past work history.  Id.  Dr. Kremper found Plaintiff's "description of his chronic pain condition and interview behavior revealed bracing, agitation and depression consistent with individuals suffering from chronic pain

which interfered with their ability to perform work-related tasks without excessive absences and problems with task persistence." Id.  Dr. Kremper stated, "There was indication [Plaintiff's] chronic pain condition significantly interfered with his ability to concentrate on tasks, verbal memory and simple mental calculation skills." Id.  He opined Plaintiff was competent to manage funds on his own behalf.  Id.  He recommended Plaintiff for outpatient mental health treatment for depression and chronic pain. Id.

The ALJ gave certain aspects of Dr. Kremper's opinion "some weight" and other aspects "little weight" (Tr. 23).  The ALJ found Plaintiff had moderate limitations in his ability to concentrate, thereby limiting him to performing simple, routine, repetitive tasks at an unskilled level, which was consistent with Dr. Kremper's opinion that Plaintiff experienced some interference with his ability to concentrate.  Id.  However, the ALJ found little support for Dr. Kremper's opinion that Plaintiff experienced "significant" interference.  Id.  The ALJ noted Dr. Kremper's opinion was inconsistent because he opined that Plaintiff's chronic pain condition significantly interfered with his ability to concentrate on tasks, verbal memory and simple mental calculation skills, but he considered Plaintiff competent to manage his own funds (Tr. 22-23).  The ALJ noted Dr. Kremper's opinion was based solely on Plaintiff's description of his chronic pain condition and his interview behavior, and Dr. Kremper's examination was conducted "in an effort to generate evidence for the current appeal" and "not in an attempt to seek treatment for symptoms" (Tr. 23).  Finally, the ALJ found Dr. Kremper's opinion was

without substantial support from other evidence of record, which rendered it less persuasive. Id.

Dr. Kremper is not a treating source; he is a consulting doctor who conducted a single examination of Plaintiff.  Therefore, his opinion is not entitled to great weight. Nonetheless, the ALJ is required to evaluate every medical opinion he/she receives, regardless of the source.  20 C.F.R. § 404.1527(d).  The ALJ is also required to "state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986)).  The weight afforded a medical source's opinion depends upon the nature and extent of the treatment relationship, evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  20 C.F.R. § 404.1527(c).  The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence.  Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983).

Here, the ALJ discussed Dr. Kremper's evaluation in detail and concluded some of his findings were internally inconsistent and unsupported by other evidence of record. It is clear the ALJ considered Dr. Kremper's opinion in accordance with 20 C.F.R. § 404.1527.  As a non-treating physician, the ALJ was not required to give Dr. Kremper's opinion controlling or substantial weight.  The ALJ properly considered Dr. Kremper's non-treatment relationship with the plaintiff, the evidence he presented to support his opinion, and the consistency of his opinion with the record as a whole.  As the ALJ

14

noted, Plaintiff did not see Dr. Kremper for treatment, but for an examination in connection with his disability claims.  This lack of familiarity supports the ALJ's decision to give only little or some weight to Dr. Kremper's opinions.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (affirming rejection of examining psychologist's opinion that plaintiff had "marked" psychological limitations because psychologist examined plaintiff only one time and "her opinion was not entitled to great weight").  As noted by the Commissioner in her responsive memorandum, the ALJ also appropriately considered that Dr. Kremper based his opinion on Plaintiff's subjective description of his chronic pain condition as Dr. Kremper's examination findings were generally normal: Plaintiff displayed "mild" agitation, restlessness and bracing; he related in a "socially appropriate manner"; and his stream of thought was logical and goal directed with no confusion, disorganization, or tangentiality.  See Ogranaja v. Comm'r of Soc. Sec., 186 F.App'x 848, 850 (11th Cir. 2006) (affirming ALJ's decision to give no weight to one-time psychological examination where ALJ noted the examination was based on subjective complaints and where the record contained no other evidence showing a history of mental illness or treatment for mental problems); Adzima v. Commissioner of Social Sec., No. 6:09-cv-1734-Orl-DAB, 2010 WL 5174495, at *7 (M.D. Fla. Dec. 15, 2010) (quoting Vreeland v. Astrue, No. 06-C-466-C, 2007 WL 5414923, at *9 (W.D. Wis. 2007)) (upholding ALJ's decision to reject opinions of claimant's doctors regarding the severity of her mental impairments where rejection was based in part on the ground that they were founded on claimant's subjective reports, which the ALJ determined were not credible).  Finally, the ALJ also appropriately

considered the lack of support for Dr. Kremper's opinions from other evidence of record. Upon review, the Court finds substantial evidence supports the ALJ's decision to give Dr. Kremper's opinions "some" or "little" weight.

### b.  Dr. Molis

Dr. Edmund Molis, M.D. reviewed the medical record and completed a Physical Residual Functional Capacity Assessment on March 18, 2010 (Tr. 372-79).  Dr. Molis opined Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk and sit about six hours in an eight-hour workday, and had unlimited push and/or pull (Tr. 373).  Dr. Molis found Plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl, and occasionally stoop and climb ladders, ropes and scaffolds (Tr. 374).  He opined Plaintiff should avoid concentrated exposure to vibration (Tr. 376).

In his decision, the ALJ noted the residual functional capacity conclusions reached by Dr. Molis "also supported a finding of 'not disabled'" (Tr. 24).  The ALJ acknowledged Dr. Molis was a non-examining physician and his opinion did not "as a general matter deserve as much weight as those of examining of treating physicians." Id.  However, the ALJ found Dr. Molis' opinion deserved "some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions as explained throughout this decision."  Id.

As stated previously, the ALJ is required to evaluate every medical opinion he/she receives, regardless of the source.   20 C.F.R. § 404.1527(d).   Contrary to Plaintiff's assertion, the ALJ did not place undue reliance upon the non-examining

16

physician's opinion.  Indeed, the ALJ found Plaintiff had greater restrictions than those assessed by Dr. Molis.  The ALJ merely cited to Dr. Molis' opinion in his extensive discussion of the evidence of record as one piece of additional evidence that supported the ALJ's determination that Plaintiff's impairments and resulting limitations did not render Plaintiff totally disabled.  Accordingly, the Court finds no error with respect to the ALJ's consideration of Dr. Molis' opinion.

### iii.    Plaintiff's Credibility

Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective complaints of pain.  The Commissioner asserts substantial evidence supports the ALJ's credibility determination.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability, 42 U.S.C. § 423(d)(5)(A).  Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561; see also SSR 96-7P (stating that after the ALJ finds a medically-determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").  When a plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P.

In the instant case, the ALJ properly applied the Eleventh Circuit's pain standard. The ALJ specifically stated he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 17).  Then, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. Id.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (stating articulated reasons must be based on substantial evidence); see also Moore v. Barnhart, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (holding precedent in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony").  The Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7P.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Upon review, the Court finds the ALJ appropriately considered Plaintiff's pain testimony and provided reasons supported by substantial evidence for discounting

Plaintiff's testimony. The ALJ stated he gave Plaintiff "some benefit of the doubt" and thus included various exertional and non-exertional restrictions in the RFC (Tr. 21). However, the ALJ found Plaintiff's conditions did not impose functional limitations so severe as to preclude him from performing sedentary work. Id. The ALJ offered numerous reasons for discounting Plaintiff's credibility, including: (1) Plaintiff's generally unpersuasive appearance and demeanor while testifying at the hearing; (2) there was evidence that Plaintiff stopped working for reasons not related to the allegedly disabling impairments; (3) Plaintiff's allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty, and it was difficult to attribute that degree of limitation to Plaintiff's medical condition in view of the relatively weak medical evidence; (4) Plaintiff provided inconsistent information regarding daily activities; (5) Plaintiff generally received conservative treatment, which was generally successful in controlling Plaintiff's symptoms; (6) Plaintiff's description of his symptoms and limitations was inconsistent and unpersuasive; (7) the record did not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or has greater limitations than those found in the RFC; and (8) Plaintiff had taken no psychotropic medications and sought no mental health treatment for his alleged mental impairments (Tr. 23-24). The ALJ stated he weighed all relevant factors and concluded Plaintiff's subjective complaints did not warrant any additional limitations beyond those established in the RFC (Tr. 24). The ALJ concluded the medical and non-medical evidence demonstrated Plaintiff was able to sustain a restricted range of sedentary residual functional capacity. Id.

An ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons." <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Foote</u>, 67 F.3d at 1561-62). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must refrain from deciding facts anew, reweighing the evidence, or substituting its judgment for that of the Commissioner. <u>Id.</u> (quoting <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Here, the Court finds the reasons provided by the ALJ are supported by the record and constitute substantial evidence to support the ALJ's credibility determination. <u>See</u> <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1203 (11th Cir. 1989) (giving three specific reasons to reject appellant's subjective complaints of pain is sufficient to properly discount appellant's testimony). The ALJ properly considered Plaintiff's daily activities and the objective medical record when discrediting his testimony. The ALJ correctly noted Plaintiff had received relatively conservative treatment for his conditions and no orthopedist or neurological surgeon recommended surgery for his allegedly disabling back impairments (Tr. 23). Indeed, Dr. Michael Campanelli, a neurosurgeon, reviewed a June 2011 MRI and observed only "mild" degenerative changes and "certainly nothing I would recommend any surgery" (Tr. 422). A November 2011 MRI of Plaintiff's cervical spine showed "mild" degenerative changes, "mildly narrowed" neural foramen, and no compression or distortion of the spinal cord (Tr. 20, 470). The ALJ also correctly noted no treating physicians had opined Plaintiff was more limited than the ALJ determined. Finally, the ALJ correctly noted Plaintiff had not taken medication or sought mental health treatment for his alleged mental impairments. <u>See</u> <u>Osborn v. Barnhart</u>, 194 F.

App'x 654, 655 (11th Cir. 2006) (finding ALJ properly discounted plaintiff's credibility by considering plaintiff's treatment for his allegedly disabling condition, lack of corroboration for subjective complaints by objective medical evidence, daily activities, and lack of limitations assessed by treating physicians).   Accordingly, the ALJ did not err in concluding Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible to the extent they contradicted the ALJ's RFC assessment.

   **iv.**  **VE Testimony**

   Plaintiff argues the ALJ erred in finding Plaintiff could perform work outside of his residual functional capacity.   Specifically, Plaintiff contends the ALJ erred in finding Plaintiff could perform jobs with a specific vocational preparation ("SVP") of 3, because the ALJ's RFC determination limits Plaintiff to unskilled work with an SVP of 1 or 2. Plaintiff argues the VE and ALJ are "required to use only the job descriptions listed in the DOT, not their own opinions about the requirements of particular jobs" (Doc. 22 at 17).   The Commissioner responds the ALJ properly relied upon VE testimony to determine whether Plaintiff could perform other work.   The Commissioner argues an ALJ may rely on VE testimony that conflicts with the Dictionary of Occupational Titles ("DOT") after eliciting a reasonable explanation for the conflict.   Upon review of the record and applicable law, the Court agrees with the Commissioner.

   In the instant case, the ALJ determined Plaintiff was "limited to unskilled work at SVP 1 or 2 performing simple, routine, and repetitive tasks" (Tr. 15).   The ALJ incorporated this limitation into his hypothetical question to the VE (Tr. 56-57).   The VE

testified the hypothetical individual described by the ALJ could perform the following jobs: food and beverage order clerk, DOT # 209.567-014, SVP 2 (about 190 jobs in Tampa Bay area, 1,000 statewide, and 13,000 nationwide); reception clerk, DOT # 237.367-010, SVP 3 (about 275 jobs in Tampa Bay area, 1,600 statewide, and 23,000 nationwide); and sorter, DOT # 209.687-022, SVP 3 (about 200 jobs in Tampa Bay area, 1,400 statewide, and 25,000 nationwide) (Tr. 57).  The VE stated his testimony was consistent with the DOT (Tr. 58).  The VE stated he had provided only the "very simplest of those jobs, which would essentially meet the requirements of the hypothetical" (Tr. 57, 58-59).  The VE testified that even though the DOT classified the jobs of reception clerk and sorter with an SVP of 3, based upon the VE's experience, the jobs identified fit into a classification of SVP 1 or 2 (Tr. 58-59).  The VE explained the DOT bases its classifications upon average jobs, "[s]o there are going to be some that . . . are going to be simpler and some that are going to be a little bit more complex" but the average would be for SVP 3 (Tr. 59).  The VE testified he reduced numbers for the jobs identified to account for the limitation to SVP 1 and 2 (Tr. 58).

The Eleventh Circuit has held that, where there is a conflict between the VE's testimony and a job description in the DOT, "the VE's testimony 'trumps' the DOT," and an ALJ may rely solely on the VE's testimony without resolving the conflict.  Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).  Subsequently, the Social Security Administration issued Social Security Ruling 00-4p to clarify standards regarding the use of VEs and vocational specialists ("VS").  SSR 00-4p provides in part:

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p.   SSR 00-4p further provides, "the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE or VS evidence and information provided in the DOT." Id. Following the promulgation of SSR 00-4p, a panel of the Eleventh Circuit, rejected the argument that SSR 00-4p modified Jones. Miller v. Commissioner of Social Sec., 246 F.App'x. 660, 662 (11th Cir. 2007) (unpublished).  The court held, "even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert." Id.   Thus, according to Miller, Jones remains binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p. Id.

Regardless if Jones or SSR 00-4p controls, the Court finds no error because the VE provided a reasonable explanation for the discrepancy between the VE's testimony and the DOT.  As SSR 00-4p recognizes, "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p.  The Eleventh Circuit has noted the DOT "is not the sole source of admissible information concerning jobs." Jones, 190 F.3d at 1230.  Because the DOT is not comprehensive, it is proper for the ALJ to use VE testimony to supplement the information in the DOT.  Id.; see also Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000) ("This Court has recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every

specific skill or qualification for a particular job.  The value of a vocational expert is that he or she is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." (internal citations and quotations omitted)).   Further, the VE may testify from his own expertise and is not required to provide supporting data, such as formal job surveys, to provide a foundation for his testimony.  See Bryant v. Comm'r of Soc. Sec., 451 F.App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."); Curcio v. Comm'r of Soc. Sec., 386 F.App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise.").  Accordingly, the ALJ did not err in relying upon the VE's testimony that Plaintiff could perform other work.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence.   Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 11th day of December, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record